CONNELLY *v.* EARL FRAZIER SPECIAL SCHOOL DISTRICT.

Opinion delivered January 18, 1926.

1. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—A finding by a chancellor will not be disturbed on appeal unless it is against the preponderance of the testimony.

2. SCHOOLS AND SCHOOL DISTRICTS—POWER TO ISSUE BONDS.—Under Special Acts 1923, p. 698, authorizing the directors of a certain special school district to issue bonds, the directors were empowered to dispose of the bonds without advertisement.

3. APPEAL AND ERROR—QUESTION NOT RAISED BELOW.—A question not raised in the court below will not be considered on appeal.

4. SCHOOL AND SCHOOL DISTRICTS—DISPOSITION OF FUNDS.—Although funds derived by a school district from a bond issue should be placed in the county treasury, yet, where the validity of the bond issue was involved in a suit, it was not improper for the directors to deposit such funds in a bank during the pendency of the litigation.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*J. C. Marshall,* for appellant.

*Emerson & Donham* and *Owens & Ehrman,* for appellee.

McCULLOCH, C. J. This is an action instituted by appellant to restrain the directors of Earl Frazier Special School District from issuing bonds for the purpose of constructing a school building.

The district in question was created by special acts of the General Assembly of 1923 (Special Acts 1923, p. 698), and § 4 of the statute confers express authority on the directors to issue bonds. The language of the statute relating to this subject is as follows: "A majority of said board of directors is hereby authorized to exe-

cute a promissory note or notes, or bonds, in the name of, and for such sum of money as may be required, which shall be similar in form as are like instruments of like kind, and shall have the same force and effect as though it had been the act of an individual; and said directors may mortgage any of the property of said district and pledge the revenues thereof as a security for payment of said notes and bonds, and against such instruments said district shall be allowed no defense by virtue of its capacity as a school district in law or equity not accorded to individuals.''

It appears from testimony adduced by appellees that at a meeting of the directors, held on July 1, 1924, a resolution was adopted authorizing the sale of bonds in the sum of $35,000, and that at another meeting, held on July 17, 1924, a contract was entered into with a certain bond dealer in the city of Little Rock for the sale of the bonds at a stipulated price, but before this contract could be consummated by the actual issuance and delivery of the bonds, appellant commenced this action and prosecuted an appeal to this court from a decree sustaining a demurrer to his complaint and dismissing the action. This court reversed the decree of the chancery court (167 Ark. 49) on the ground that there was a statement of a cause of action in the complaint as to waste and mismanagement of the funds, and in reversing the decree there was a direction to permit appellant to amend his complaint for the purpose of making it more definite and certain. On the remand of the cause and the dissolution of the temporary injunction granted by this court, the directors attempted to consummate the sale of the bonds by delivery to the individual to whom they had been contracted, and, according to the testimony, there was an actual delivery of the bonds and payment of the fund, which was placed in one of the banking institutions in Little Rock to the credit of appellee district. Appellant amended his complaint so as to show these facts, and asked that relief be granted against the consummation of the sale, and the purchaser of the bonds was made a party to the action.

It is contended in the first attack on the validity of the bonds that all of the directors were not present at either of the meetings on July 1, or July 17, 1924, and that the absent members were not notified of the meetings. There are six members of the board of directors, and it appears from the testimony that at each of the meetings in question four directors attended and two were absent. There is a sharp conflict in the testimony as to whether or not notice was given to the two absent members. Each of them denied that they received the written notices claimed to have been sent, but one of the absentees testified that he received information of the meeting—was told of it verbally by one of the directors—and that he started to attend the meeting but that his car broke down before he got there. The testimony adduced by appellees was to the effect that written notice was given to the absent members. We do not think that the finding of the chancery court on this issue is against the preponderance of the evidence. It was purely an issue of fact, and, under settled rules of practice here, we are not permitted to disturb the finding of the chancery court unless against the preponderance of the testimony. No useful purpose would be served by setting out the testimony in detail, and it is sufficient to say that it has been carefully considered by this court and found sufficient to support the finding of the chancellor.

It is next contended that the sale of the bonds was void because not advertised. There is some conflict in the testimony as to whether or not any sort of notice was published, but it is unnecessary to discuss the effect of the testimony, for we are of the opinion that the statute under which this district is operating does not require notice as a prerequisite to the exercise of the power to issue bonds. Counsel for appellant rely upon the general statutes of the State authorizing school districts to issue bonds. Crawford & Moses' Digest, §§ 8837, 8840, 8884. Those statutes do not apply for the reason that they antedate the statute under which this district is operating,

and apply only to districts organized under those statutes. In the special statute now under consideration, express power is granted to issue bonds without restriction, and the language of the statute does not evince any intention to annex to that power any of the restrictions found in prior general statutes. On the contrary, the language clearly implies unrestricted power to issue bonds. Counsel for appellant rely upon the case of *Rural Special School District* v. *Pine Bluff*, 142 Ark. 279, as sustaining their contention that the prior general statutes control, but we are of the opinion that there was a different question involved in that case, and that the principles announced do not apply here.

The charge of waste and mismanagement is no longer involved in the case on this appeal. There is, however, a contention here that the statute was violated by the payment of a bonus or commission which was in effect a sale of the bonds at less than par. The facts that a bonus or commission was paid came out incidentally in the testimony, and is not raised in the pleadings. It does not appear from the record that this question was involved in the hearing below, and it is too late now to raise it here for the first time.

It is also contended that the sale of the bonds should be restrained on account of payment into the bank instead of the county treasury. Of course, the fund should go into the county treasury, and any efforts on the part of the directors to divert the fund would be restrained upon the application of any taxpayer of the district, but it does not appear that the deposit in the bank was anything more than a temporary disposition of the funds during the pendency of this litigation. The fact that the directors have made an improper deposit of the funds received does not involve the validity of the bond issue.

We are of the opinion therefore that the effort to restrain the issuance of bonds is without legal foundation, and that the chancery court was correct in refusing relief. No abuse of power on the part of the directors

is shown, and it appears to be merely a controversy between taxpayers as to whether or not they want to construct the building and issue bonds to pay for it. That is a matter over which the court has no control unless there is an abuse of power. The statute vests all authority in the directors, and the courts are not justified in assuming to take that authority from them.

Finding no error in the decree, the same is affirmed.