NATHAN SPECIAL SCHOOL DISTRICT No. 4 *v.* BULLOCK SPRINGS SPECIAL SCHOOL DISTRICT No. 36.

Opinion delivered April 27, 1931.

*Tom Kidd,* for appellant.

*Jas. S. McConnell* and *J. M. Jackson,* for appellee.

BUTLER, J. On April 5, 1930, there was a petition filed with the county board of education of Pike County for the consolidation of Nathan Special School District No. 4 with Bullock Springs Special School District No. 36. A short time after the filing of the petition, notices signed by four of the petitioners were posted by the sheriff in the manner provided by law and more than thirty days before May 24, 1930, on which day the hearing of the petition was to be held. The school board made the order of consolidation, from which there was an appeal to the circuit court where the case was heard upon the petition, the remonstrance filed before the county board of education, and the testimony of a number of witnesses. The court found in favor of the remonstrance, from which judgment is this appeal.

It was contended by remonstrants before the county board of education, and before the circuit court on appeal, (1) that no proper notice had been given of the proposed consolidation, in that the notice posted was signed by four only of those who had signed the petition, and that said notice should have been signed by all of the petitioners; (2) that the petition was not signed by a majority of the electors in the territory affected; (3) that the county board of education had no jurisdiction to hear and determine the petition because a part of the territory affected was situated in Howard County.

The trial court properly held that the notice was sufficient and properly given. The only purpose which the notice serves is to inform those interested of the nature and effect of the proceeding and the date upon which it would be submitted for a hearing. Those of the petitioners who sign the notice do so for themselves and all the other signers.

The court did not pass upon the question whether the petitions were signed by a majority of the electors, but ruled that those who signed it might not, after the petition was filed, arbitrarily withdraw their names therefrom.

Act No. 156, Acts 1927, authorized the county board of education of any county to change the boundary lines of school districts within the county, and it was under this act that the petitions were filed and the board acted. Under the provisions of act No. 12 of the Acts of 1929, amending § 8858 of Crawford & Moses' Digest, where it is proposed to consolidate school districts adjoining but lying in more than one county, it is necessary for the board of education of both counties to act by ordering an election. None of the provisions of that act were complied with.

The trial court found the facts to be that Bullock Springs Special School District No. 36 sought to be annexed to Nathan Special, in Pike County, lay partly in Pike County and partly in Howard County, and, since the present proceeding was not attempted to be made in compliance with the provisions of act No. 12 of the Acts of 1929, the order for consolidation was improvidently made and void.

The sole question is whether or not such finding of fact was warranted. It appears from the evidence in the case that Bullock Springs Special School District, as originally formed, lay wholly in Pike County. Prior to 1918 certain patrons in Howard County transferred to the Bullock Springs District in Pike County because the territory in which they lived was not accessible to the school in the district in Howard County. This territory comprised about two sections of land and is called in this controversy "the Howard strip." From time to time controversies arose between Bullock Springs Special School District and the school authorities in Howard County regarding the right of those residing in Howard County strip to send their children to the school in Bullock Springs Special School District, but during all

of the time the children continued to attend the school in that district. In order to compensate the district the authorities in the school district in Howard County, in which the children resided, paid to the Bullock Springs Special School District certain sums of money, and at other times the property in the Howard County strip was assessed as in Bullock Springs Special School District and the taxes paid to the credit of that district. It is certain that the patrons in the Howard County strip transferred to Bullock Springs Special School District, but it is not clear just what other proceedings were had. However, it is apparent that the situation was not altogether satisfactory, and about the year 1920, or a year or two later, there was an attempt made to detach the Howard County strip from the School District in Howard County and to consolidate it with Bullock Springs Special School District. A petition was circulated in Howard County in the territory affected and presented to the school board of that county, and a like petition was also circulated in Pike County and presented to the school board of that county.

There is no evidence that the school boards of either county took any formal action on the petitions or made any order with respect thereto. It seems that on the advice of one of the prominent citizens the patrons residing in the Howard County strip sent their children to school and paid their taxes in Bullock Springs Special School District and said nothing further about their differences. This continued until the time of the filing of the petition in this proceeding, one or more of the electors in the Howard County strip being elected on the school board of Bullock Springs Special School District and taking part in the management of the school affairs.

From these facts the learned trial judge concluded that "the territory known as the 'Howard County strip' and the Bullock Springs Special School District No. 36 were formed into a special school district and recognized as such by the school authorities of both counties. The

proceedings under which the district was formed are irregular, but these irregularities were cured by act No. 156 of the Acts of 1927," and he cites the case of *Allen* v. *Harmony Grove Consolidated School District No. 19*, 175 Ark. 212, 298 S. W. 997, in support of the conclusion reached. It is very evident that for all practical purposes the Howard County strip was treated as a part of Bullock Springs Special School District, but it was not annexed or consolidated therewith, for, as we have seen, there was never any order made by the school board of either county to that effect. Therefore, there was no act or proceeding done or had by said county boards to be ratified and rendered valid by act No. 156 of the Acts of 1927. That part of the act relevant to the question is as follows: "Any and all acts and proceedings heretofore done and had by the county boards of education are hereby ratified and declared valid."

In *Allen* v. *Harmony Grove, supra,* the county board of education made an order consolidating two certain districts, and this court held that this order was erroneously made for certain reasons given in the opinion, but that the effect of that part of act No. 156 quoted above was to render valid the irregular order made. In the instant case, however, there was no order made, and consequently there was nothing to render valid. Therefore all the territory of Bullock Special and of Nathan Special is situated in Pike County, and the board of education of said county was authorized to make the order annexing the two districts, and the order made must be upheld, if a majority of the qualified electors within the territory affected signed the petitions. The judgment of the court below must therefore be reversed, and the cause remanded for a determination of the question.

We deem it proper in this connection to say that the action of the trial court in refusing to allow certain signers of the consolidation petition to have their names removed from the petition was correct. The petition

had already been filed and something more than a mere change of mind would be necessary before they would be permitted to withdraw their names. Before the filing of a petition, a signer would be privileged to have his name taken from the petition as a matter of right, but after the filing of the petition this could be done only where the signature had been procured by some improper method by which the signer was deceived and a fraud perpetrated upon him. *Williams* v. *Citizens,* 40 Ark. 290; *McCullough* v. *Blackwell,* 51 Ark. 164, 10 S. W. 259; *Bordwell* v. *Dills,* 70 Ark. 175, 66 S. W. 646. Thus stood the law at the time of this proceeding.

For the error indicated the judgment is reversed, and the cause remanded for further proceedings in conformity to law and not inconsistent with this opinion.